UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CITY OF BRIDGEPORT, a body politic of the State of Connecticut, on behalf of itself and all others similarly situated, | ) ) ) ) ) | |
| | ) ) | CIVIL ACTION FILE NO. 3:12-cv-1218 (CSH) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a federally chartered private corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a federally chartered private corporation; and FEDERAL HOUSING FINANCE AGENCY, as conservator for FEDERAL NATIONAL MORTGAGE ASSOCIATION and FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | APRIL 22,  2014 |
| Defendants. | ) ) | |

**RULINGS ON DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**HAIGHT, Senior District Judge:**

Throughout the United States, upon the sale of real property state or local laws require the

seller to pay a transfer tax to the government involved.  For the individual seller, the transfer tax is

sufficiently modest to be no more than a nuisance.  But if over time hundreds of thousands of sales take place, the transfer tax is of importance to a taxing authority.  And if a single entity can be identified as involved in hundreds of thousands of real property sales, that entity becomes highly important to the taxing authority.

These unremarkable, even pedestrian reflections are prompted by this case, a purported class action Plaintiff City of Bridgeport, Connecticut, brings against Defendants Federal National Mortgage Association; Federal Home Loan Mortgage Corporation; and Federal Housing Finance Agency, as Conservator of the two first-named Defendants.  Plaintiff purports to sue on behalf of itself and all other municipalities in Connecticut that have filed or recorded a deed from one or another  Defendant.  The theory of Plaintiff's action is that Connecticut municipalities are entitled to collect from these Defendants a transfer tax imposed by state statute, Conn. Gen. Stat. § 12-494, *et seq.*  Defendants contend that governing federal law exempts them from this state tax.

Defendants move [Doc.29] to dismiss Plaintiff's action.  Plaintiff cross-moves [Doc.36] for partial summary judgment.  This Ruling resolves both motions.

## I.  BACKGROUND

The Federal National Mortgage Association ("Fannie Mae" or "Fannie") and the Federal Home Loan Mortgage Company ("Freddie Mac" or "Freddie") are federally-chartered but privately owned corporations that issue publicly traded securities.  The United States Congress created Fannie and Freddie to establish and stabilize secondary markets for residential mortgages in order to "promote access to mortgage credit throughout the Nation."  12 U.S.C. § 1716  (Fannie Mae); *see also* 12 U.S.C. § 1451 note (Freddie Mac).  Fannie and Freddie perform those functions by

purchasing mortgages from third-party lenders, pooling them together, and selling to the public

securities backed by those mortgages.

In the wake of the housing market collapse in 2008, Fannie and Freddie found themselves

owning a great many defaulted and overvalued subprime mortgages.  They went bankrupt.  On July

30, 2008, Congress created the Federal Housing Finance Agency ("FHFA") to act as conservator for

Frannie and Freddie.  While the FHFA is a separately named Defendant in this action, for purposes

of resolving the decisive issues all three federal agencies (as I shall collectively refer to them on

occasion) are identically situated.

Congress exempted these federal agencies from state and local taxation.  Fannie Mae's

exemption statute provides:

> [Fannie Mae], including its franchise, capital, reserves, surplus,
> mortgages or other security holdings, and income, shall be exempt
> from all taxation now or hereafter imposed by any State, . . . or by any
> county, . . . except that any real property of the corporation shall be
> subject to State, territorial, county, municipal, or local taxation to the
> same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).  Freddie Mac's and the FHFA's exemption statutes are materially identical

to Fannie's.  *See* 12 U.S.C. § 1452(e) (Freddie Mac); 12 U.S.C. § 4617(j)(2) (FHFA).   In

consequence, the three federal agencies in the case at bar are exempt from "all taxation" by any state

or local government, with the sole exception that they are still subject to taxes on any real property

they happen to own.

This brings us to the claims the City of Bridgeport asserts against Fannie Mae, Freddie Mac,

and the FHFA in the case at bar.  The operative pleading is Bridgeport's First Amended Complaint

("FAC") [Doc. 23].  Bridgeport, on its own behalf and purportedly on behalf of all other Connecticut

municipalities, complains of the failures of these federal agencies to pay a tax imposed by the State

of Connecticut on the transfer of each deed of real property ("the transfer tax").

The federal agencies now move under Fed. R. Civ. P. 12(b)(6) to dismiss the FAC with

prejudice for failure to state a claim upon which relief can be granted.  The federal agencies contend

that the federal statutes of their creation exempt them from paying this state tax.

Bridgeport cross-moves for partial summary judgment [Doc. 36] on the issue of liability,

contending that Fannie Mae, Freddie Mac or the FHFA must pay the Connecticut transfer tax in

respect of any transfer of a deed to real property with which any of the federal agencies was

involved.

## II.  DISCUSSION

If one asked for the names of local bodies politic who, like Bridgeport, are attempting to tap

into these federal agencies' resources to pay transfer taxes, an appropriate short answer would be

"Legion; for we are many."[1]  The recent prevalence of legal actions such as the one at bar reflects

recent economic reversals on the national scene.  In *DeKalb County v. Federal Housing Finance

Agency*, 741 F.3d 795, 798   (7th Cir. 2013), the Seventh Circuit, discussing the FHFA

conservatorship in the context of a lawsuit identical to the one at bar, observed that beginning in

2008 "the states (including their subdivisions, such as counties) found themselves in dire need of

additional tax revenues but reluctant to impose or increase taxes that would drive businesses and

people to lower-tax states."  Because "[t]here was no danger that taxing Fannie would drive people

or businesses out of a state, and the number of foreclosures made it possible that the imposition of

---

[1]  *Compare* Mark  5:9.

such a tax on Fannie would produce significant revenue," ranks of states and counties throughout

the nation formed and attempted to collect taxes on the transfer of Fannie- and Freddie-owned real

property. 741 F.3d at 798.   Bridgeport marches in those ranks.

Those efforts consistently fail.  In *County of Erie, N.Y.  v. Federal Housing Finance Agency*,

No. 13-CV-284S, 2014 WL 795967 (W.D.N.Y. Feb. 27, 2014), Chief Judge Skretny noted while

dismissing Erie's action against Fannie, Freddie and the FHFA for failure to pay transfer taxes: "But,

over the course of the last three years, arguments virtually identical to those raised here have been

unanimously rejected by dozens of federal courts, including four appellate courts."   2014 WL

795967, at *3.  *Erie* then sets forth a lengthy list of circuit and district court citations which I will

not replicate; I content myself with incorporating by reference Judge Skretny's compendium of

authorities, and adding this expression of admiration and gratitude for his industry.  However, it is

useful to consider briefly several of the circuit courts of appeals decisions:  *Delaware County,*

*Pennsylvania v. Federal Housing Finance Agency, et al.,* Nos. 13–2163, 13–2501, 13–3175, — F.3d

—, 2014 WL 1012961 (3d Cir. March 18, 2014); *Hennepin County v. Federal National Mortgage*

*Association*, *et al.,* 742 F.3d 818 (8th Cir. 2014); *DeKalb County v. Federal Housing Finance*

*Agency, et al.,* 741 F.3d 795 (7th Cir. 2013);  *Montgomery County, Maryland v. Federal Housing*

*Finance Agency, et al.,* 740 F.3d 914 (4th Cir. 2014); and *County of Oakland v. Federal Housing*

*Finance Agency, et al.,* 716 F.3d 935 (6th Cir. 2013).

Bridgeport sensibly regards the federal agencies' statutory exemption from state taxes as an

obstacle to its effort to make the agencies pay state taxes.  Seeking to avoid that obstacle, Bridgeport

makes a number of arguments, all of which the circuit courts have turned down.  Bridgeport begins,

Main Brief [Doc. 37] at 2, with what it characterizes as "the cardinal rule of statutory construction:

statutory exemptions from taxation will be strictly construed against the taxpayer, in favor of the government, and may never be implied."[2]  That rule, Bridgeport contends, supports its conclusion that Connecticut's transfer tax is an "excise" tax and the federal agencies' exemption "covers only *direct* taxes and not *excise* taxes."  *Id.,* at 5 (emphases in original).

The cited circuit court opinions identify a different rule of construction as "the cardinal" one: "It is the cardinal canon of statutory interpretation that a court must begin with the statutory language."  *Delaware Cnty.*, 2014 WL 1012961, at *3 (citation and internal quotation marks omitted).  *See also Hennepin Cnty.*, 742 F.3d at 821 ("When interpreting a statute, we look to its plain language" (citations omitted)).  While Bridgeport's brief and the Third Circuit in *Delaware County* refer to "the cardinal rule" (or "canon") in the singular, one need not quibble about whether there can be more than one *cardinal* concept.  The important point for the present analysis is that the circuit courts regard the second-stated rule of construction as the decisive one.

As the Third Circuit noted in *Delaware County*, the federal agencies "are statutorily exempt from 'all taxation' imposed by the states or their local subdivisions, with one notable exception – the states may tax the [federal agencies'] real property."  2014 WL 1012961, at *3.  To paraphrase a recent political leader, "it depends on what your definition of 'all' is."  Applying several maxims, the Third Circuit reasoned that "the solitary exception subjecting the [federal agencies] to real property taxation implies strongly that they are exempt from all other types of taxes," *id.*, and concluded:

> Appellants' [the local counties'] argument is fundamentally incompatible with the statutory text.  Accordingly, we will join our sister circuits, interpret the phrase "all taxation" to mean precisely what it says, and hold that the [federal agencies] are statutorily

---

[2]    The Court cites Bridgeport's page numbers appearing in the brief, rather than the page numbers designated by the Court filing system (which appear in blue in the upper right hand corner).

exempt from paying state and local real estate transfer taxes.

*Id*., at *5.

Bridgeport and similarly situated local governments in earlier decided cases placed principal reliance upon what became the default authority for requiring Fannie, Freddie and the FHFA to pay transfer taxes: *United States v. Wells Fargo Bank*, 485 U.S. 351 (1988). *Wells Fargo* construed a federal statute that provided that certain "project notes" (obligations, functionally equivalent to bonds, issued by state and local authorities to finance housing projects) "shall be exempt from all taxation now or hereafter imposed by the United States." 485 U.S. at 355. The Supreme Court held that the exemption did not apply to federal estate tax on a bequest of project notes, because such a tax is an excise tax and the "all taxation" exemption was intended only for "direct taxation," namely a property tax. *Id.* at 355-56. The project notes were property, and so, by reason of the exemption, could not be taxed by, for example, requiring the owner of the notes to pay a specified amount in tax every year, like a tax on real estate. But, the *Wells Fargo* Court reasoned, the *transfer* of the notes, as by bequest or sale, was not property and so could be taxed, notwithstanding the exemption.[3]

Bridgeport reads *Wells Fargo* as holding that "'all taxation' exemptions do not apply to excise taxes," and holding further that "'all taxation' covers only *direct* taxes and not *excise* taxes." Brief [Doc. 37] at 4, 5 (emphases in original). Because, in Bridgeport's view, the transfer taxes imposed by Connecticut on property owned by Fannie, Freddie or the FHFA are excise taxes, *Wells Fargo* mandates a conclusion that they fall outside the exemptions contained in the statutes which created these federal agencies.

---

[3]   The summary of *Wells Fargo* in this paragraph of text is adapted from Judge Posner's decision in *DeKalb County*, 741 F.3d at 800.

Every circuit court considering the question has rejected this very argument by local governments. Specifically, local governments contend that the Supreme Court's holding in *Wells Fargo* takes transfer taxes outside of the federal agencies' statutory exemptions. In *DeKalb County*, Judge Posner dismissed the plaintiffs/appellants' reliance on *Wells Fargo*:

> The appellants latch on to the fact that the exception the Court recognized for transfer taxes was not express; the statute said "all taxation" and not "all taxation except transfer taxes." But they misread the statute. It said that the project notes *themselves* were nontaxable – not that their transfer was nontaxable. The Court was saying that an exemption from property taxes, such as a tax on project notes, is not an exemption from transfer taxes as well, because a transfer tax is not a property tax even when the transfer is of property.
>
> Had the Supreme Court meant to hold that the term "all taxation" means just property taxation – a very strange reading, equivalent to interpreting "all soup" to mean "all lobster bisque" – it would have had to overrule *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941). . . . *Wells Fargo* does not even cite *Bismarck.*

741 F.3d at 800.

I consider *infra* the Supreme Court's decision in *Bismarck*, and note here the Third Circuit's rejection in *Delaware County* of the local counties' argument based on *Wells Fargo*:

> In Appellants' view, the Supreme Court's exegesis of the meaning of "all taxation" in *Wells Fargo* controls our interpretation here.
>
> The flaw in this argument . . . is that *Wells Fargo* involved an exemption of specific *property* from all taxation, whereas this case involves exemptions of *entities*. The excise tax that the Court considered in *Wells Fargo* was an excise tax on the *transfer* of property at death, and "transfer of the notes, as by bequest or sale, was not property and so could be taxed." *DeKalb County*, 741 F.3d at 800 (emphasis omitted). Contrary to Appellants' argument, the distinction between a property exemption and an entity exemption renders *Wells Fargo* inapposite.

2014 WL 1012961, at *4 (emphases in original).

In *Hennepin County*, the Eighth Circuit adopted the distinction between exemption of specific property from all taxation and exemption of an entity. The court said:

> In contrast to the housing project note exemption in *Wells Fargo* and like the statutory exemptions Congress created for the federal agencies [Fannie, Freddie and the FHFA], the language of the Farm Loan Act in *Bismarck Lumber* exempted the banks themselves from taxation. *Bismarck Lumber*, 314 U.S. at 99.

742 F.3d at 823 (parallel citation omitted).

In *Bismarck*, the Supreme Court case referred to by these circuit court opinions, the Court held that a federal statute which stated that "every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken," exempted land banks from sales taxes on property that they bought. *Fed. Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. at 96 n. 1, 99-100 (1941). "Fannie's tax exemption," Judge Posner observed in *DeKalb County*, "like that of the federal land banks in *Bismarck*, exempts an entity – Fannie – and not just its property, which was the issue in *Wells Fargo*." 741 F.3d at 800. "The important point," Judge Posner concluded, "is that, as is plain from reading *Welles Fargo*, and plainer still when it is read in conjunction with *Bismarck*, the Fannie Mae statute exempts Fannie from real estate transfer taxes levied by state or local government." *Id*. at 801.

Bridgeport is aware of, and disquieted by, *Bismarck*. Bridgeport's main brief says at 4 n. 5: "*Wells Fargo* did not expressly overrule *Bismarck* because the issues presented were different and *Bismarck* is inapposite." That is not a view shared by the circuit courts, as the several quotations *supra* make plain, to which one may add the Eighth Circuit's statement in *Hennepin County*: "The Supreme Court has never explicitly or implicitly overruled *Bismarck Lumber*. Like the Sixth and

Seventh Circuits, we conclude that *Bismarck Lumber* controls the issue in this case." 742 F.3d at 823

(citing *Cnty. of Oakland*, 716 F.3d at 943, and *DeKalb Cnty.,* 741 F.3d at 800-01).

I note in passing that Bridgeport's brief at 5-6 singled out for special praise the district court's

opinion in *County of Oakland v. Federal Housing Finance Agency*, 871 F.Supp.2d 662, 2012 WL

1658789 (E.D. Mich. 2012). The brief urges this Court to "follow the persuasive reasoning and

analysis of the *Oakland* [district] Court," and "reach the same conclusion for Connecticut, *i.e.*, that

Fannie and Freddie are not exempt from, and owe, the Transfer Tax as a matter of law." Brief [Doc.

37], at 6. The persuasive nature of the district court's reasoning eluded the court of appeals; the Sixth

Circuit reversed the district court's summary judgment in favor of the plaintiff county and remanded

with instructions to enter judgment for the defendant federal agencies. 716 F.3d 935 (6th Cir. 2013).

In *Delaware County*, 2014 WL 1012961, at *5, the Third Circuit said succinctly of the *Oakland* case:

> [I]n *County of Oakland v. Federal Housing Finance Agency*, the
> Sixth Circuit reversed the only court in the country to have agreed
> with Appellants' argument. The Sixth Circuit held that *Bismarck*
> controlled, and that Appellants' "argument would require us to stretch
> *Wells Fargo* beyond its clear language."

(citations omitted).

The district court in *Oakland*, now reversed, apparently remains "the only court in the

country" to have agreed with the arguments Bridgeport makes in the case at bar. I decline

Bridgeport's invitation to become the second. Each of the five circuit courts to have considered the

question – the Third, Fourth, Sixth, Seventh and Eighth – has held that Fannie, Freddie and the

FHFA are exempted by federal statutes from paying state or local transfer taxes. The Second Circuit

does not appear to have ruled on the point, and of course I am not bound by the decisions of other

circuits. But I may agree with those circuit courts if I think they got it right, and in point of fact I do

think so.  I hold that the defendant federal agencies are exempted from paying the Connecticut transfer taxes.

One additional issue must be considered.  In *DeKalb County*, Judge Posner said: "The appellants' fallback position is that if (as we have just held) the Fannie Mae statute does exempt Fannie from transfer taxes, the statute is unconstitutional." 741 F.3d at 801.  The local governments made fallback constitutional arguments in a number of the cited circuit cases.  Bridgeport asserts a constitutional argument in the case at bar.  Its brief at 37 says that this Court "should hold that Fannie and Freddie are not exempt from the transfer tax for the additional reason that such a construction of the exemption statutes will avoid the question of whether Fannie and Freddie's exemption from the Transfer Tax is constitutional."  Bridgeport's argument appears to be that Congress's exemption of these agencies from state transfer taxes exceeds its constitutional powers.  Its principal focus is upon the commerce clause.  Brief at 37-39.

No extended discussion on this point is required.  Every circuit court considering the question has held that the tax exemptions contained in the statutes creating the federal agencies pass constitutional muster.  *See Delaware Cnty.,*  2014 WL 1012961, at *7-10; *DeKalb Cnty.*, 741 F.3d at 801-03 ("The constitutional basis for the statute is the commerce clause, and it is obvious that the home mortgage market is nationwide, and indeed worldwide, with home mortgages being traded in vast quantities across state lines. . . . No provision of the Constitution insulates state taxes from federal powers granted by the Constitution, which include of course the power of Congress 'to regulate Commerce with foreign nations, and among the several States'. . . . Art. I, § 8, cl. 3.").  There is no substance to Bridgeport's fallback constitutional argument.

### III.  CONCLUSION

For the foregoing reasons, the Defendants are entitled to a judgment pursuant to Rule 12(b)(6) dismissing Bridgeport's complaint for failure to state a claim upon which relief can be granted.  The only relief Bridgeport prays for is an order by this Court directing Defendants Fannie Mae, Freddie Mac, and the FHFA to pay State of Connecticut transfer taxes.  That relief cannot be granted because the Defendants are exempted by governing federal statutes from paying those taxes. Bridgeport's complaint will accordingly be dismissed with prejudice.  The Court does not reach any of the complaint's class action allegations.

In certain circumstances, it is appropriate for a district court dismissing a complaint under Rule 12(b)(6) to grant the plaintiff leave to replead (at least once).  However, in the case at bar there is no discernible way for Bridgeport to cure the deficiencies in its complaint.  Leave to replead will not be granted.[4]

The present motions are resolved as follows:

Defendants' motion [Doc. 29] to dismiss Plaintiffs' complaint is GRANTED, without leave to replead.

Plaintiff's cross-motion [Doc. 36] for partial summary judgment is DENIED.

---

[4]    In so holding, the Court recognizes the United States Supreme Court's seminal "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*  Because the Defendants are statutorily exempted from paying transfer taxes, Plaintiff's FAC [Doc. 23] did not and  cannot state a viable claim for relief.

The Clerk of the Court is directed to dismiss the complaint with prejudice, and to close the file.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         April 22, 2014


                                          /s/Charles S. Haight, Jr.
                                          CHARLES S. HAIGHT, JR.
                                          Senior United States District Judge